IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| BOKF, N.A.,<br><br>    Plaintiff,<br><br>vs.<br><br>EVANS CARE GROUP, LLC,<br> and<br>SUNSHINE RETIREMENT LIVING, LLC,<br><br>    Defendants. | Civil Action Number: _____ |

**VERIFIED COMPLAINT FOR DAMAGES, APPOINTMENT OF RECEIVER,
AND INJUNCTIVE RELIEF**

COMES NOW, BOKF, N.A., d/b/a Bank of Oklahoma, (the "Lender") by and through its undersigned counsel, and files this *Verified Complaint for Damages, Appointment of Receiver, Injunctive Relief, and an Accounting* (the "Complaint") against Evans Care Group, LLC ("Evans"), and Sunshine Retirement Living, LLC ("SRL" and together with Evans, "Defendants"), respectfully showing the Court as follows:

**NATURE OF THE ACTION**

1.     Lender made a loan in the original principal amount of $27,500,000.00 jointly and severally to four Borrowers under common ownership pursuant to that certain Loan Agreement dated as of October 31, 2019 (the "Original Loan Agreement"), by and among Lender, Evans, Gahanna Care Group, LLC ("Gahanna"), Mason Care Group, LLC ("Mason"), and Mishawaka Care Group, LLC ("Mishawaka").

2. The proceeds of the Loan under the Original Loan Agreement were used to refinance mortgage debt for four healthcare facilities: Marshall Pines Alzheimer's Special Care Center ("Marshall Pines") owned by Evans, Sage Park Alzheimer's Special Care Center ("Sage Park") owned by Gahanna, Central Park Alzheimer's Special Care Center ("Central Park") owned by Mason, and Heritage Pointe Assisted Living & Memory Care ("Heritage Point") owned by Mishawaka.

3. As more fully described below, after a series of defaults, forbearance agreements and related events, the Sage Park, Central Park and Heritage Point facilities have all been sold, the proceeds of which have gone to pay down some of the debt to Lender, leaving Evans as the sole Borrower and Marshall Pines as the sole facility collateral securing the obligations under the Loan Documents (as that Term is defined below).

4. As of May 31, 2024, the principal debt remaining under the Loan Documents is $15,386,636.65.

5. Pursuant to Rules 65 and 66 of the Federal Rules of Civil Procedure (the "Federal Rules"), this Complaint seeks to enforce the Loan Documents.

6. The Loan Documents provide that, upon the occurrence of an Event of Default, the Lender, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right, without notice and without regard to the sufficiency or value of any security for the loan, to the appointment of a receiver to take possession of and to operate Marshall Pines and to collect and apply any revenue and to sell all or any part of the mortgaged property.

7. The Lender seeks entry of an order granting the following relief: (a) a money judgment against Evans for the outstanding balance due under the Loan Documents,

pre-judgment interest, post-judgment interest, attorneys' fees, and the expenses of collection; (b) appointment of a receiver for Marshall Pines; (c) injunctive relief; (d) an accounting; and (e) such other and further legal and equitable relief as the Court may find just and proper.

8. A true and correct copy of the Original Loan Agreement is attached hereto as **Exhibit "A"** and incorporated herein by reference.

9. A true and correct copy of the Promissory Note dated October 31, 2019, and executed by Evans and the other Borrowers (the "Original Note") is attached hereto as **Exhibit "B"** and incorporated herein by reference.

10. A true and correct copy of the Deed to Secure Debt and Security Agreement, dated October 31, 2019 (the "Marshall Pines Mortgage") recorded November 1, 2019 in Columbia County, Georgia in Book 12232 at pages 0225 through 0258, and granting Lender a lien in and upon all real and personal property assets owned by Evans, including Marshall Pines, is attached hereto as **Exhibit "C"** and incorporated herein by reference.

11. SRL is the manager of the Marshall Pines facility. A true and correct copy of the Management Subordination Agreement dated October 31, 2019 (the "Marshall Pines Management Subordination Agreement"), whereby SRL subordinated any interests under its Management and Consulting Services Agreement with Evans to the rights, liens and security interests of Lender, and undertook certain other obligations to Lender, is attached hereto as **Exhibit "D"** and incorporated herein by reference. The Original Loan Agreement, the Original Note, the Marshall Pines Mortgage and the Marshall Pines Management Subordination Agreement are referred to herein as the "Original Loan Documents."

## STATEMENT OF THE PARTIES, JURISDICTION, AND VENUE

12. The Lender is a national banking association with its principal place of business being in the State of Oklahoma and its principal office address being One Williams Center, 12th Floor, Tulsa, Oklahoma 74172.

13. Evans is a limited liability company organized under the laws of the State of Washington and registered to conduct business in the State of Georgia with its principal place of business being the Marshall Pines facility located at 743 North Belair Road, Evans, Columbia County, Georgia 30809. Evans may be served with Summons and Complaint by service upon its Registered Agent, National Registered Agents, Inc., 289 S. Culver Street, Lawrenceville, Gwinnett County, Georgia, 30046-4805, or wherever such agent may be found.

14. Evans is a proper party defendant because it is directly responsible for making payments to the Lender as Borrower pursuant to the terms of the Loan Documents.

15. SRL is a limited liability company organized under the laws of the State of Delaware. SRL's principal office is 807 S. W. Industrial Way, Bend, Oregon 97702. SRL may be served with Summons and Complaint by service upon its Registered Agent, National Registered Agents, Inc., 289 S. Culver Street, Lawrenceville, Gwinnett County, Georgia, 30046-4805, or wherever such agent may be found.

16. SRL is a proper party defendant because it is the current manager of the Marshall Pines facility.

17. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that (i) the amount in controversy exceeds $75,000.00, exclusive of interest and costs and (ii) there is diversity of citizenship between two or more adverse parties.

18.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this Complaint occurred in the Southern District of Georgia, specifically in Evans, Columbia County, Georgia, and the Marshall Pines is located in Evans, Columbia County, Georgia, which lies within the Southern District of Georgia.

### I. LOAN DOCUMENTS, EVENTS OF DEFAULT, AND FORBEARANCE AGREEMENTS

19.  Under the terms of the Original Loan Documents and other related documents, the original four borrowers, Evans, Gahanna, Mason and Mishawaka, were jointly and severally indebted to Lender.

20.  Under the terms of the Original Loan Documents and other related documents, the Marshall Pines Mortgage granted a lien and security interests in the Marshall Pines facility in favor of Lender to secure all obligations under the Original Promissory Note.

21.  Under the terms of the Original Loan Documents, the proceeds of the loan were used to, among other things, refinance the existing debt and payoff and obtain a release of a previous lien upon the Marshall Pines facility.

22.  Effective as of July 31, 2020, Evans, together with the other borrowers, entered into a Forbearance Agreement (the "First Forbearance Agreement"), which, among other things, acknowledged that the borrowers had failed to achieve the required Debt Service Coverage ratio as set forth in Section 6.2 of the original Loan Agreement for the quarters ending March 31, 2020 and June 30, 2020.

23.  Effective as of May 16, 2022, Evans, together with the other borrowers, entered into a Forbearance Agreement (the "Second Forbearance Agreement"), which,

among other things, acknowledged that the borrowers had (i) continuously failed to comply with the financial covenants set forth in Sections 6.1 and 6.2 of the original Loan Agreement, and (ii) failed to pay principal and interest due as of July 1, 2022.

24. Effective as of October 31, 2022, Evans, together with the other borrowers, entered into a Forbearance Agreement (the "Third Forbearance Agreement"), which, among other things, acknowledged that the borrowers had (i) continuously failed to comply with the financial covenants set forth in Sections 6.1 and 6.2 of the original Loan Agreement, and (ii) failed to pay, at the then maturity date of October 31, 2022, the entire outstanding balance.

25. Effective as of June 26, 2023, Evans, together with the other borrowers, entered into a Forbearance Agreement (the "Fourth Forbearance Agreement"), which, among other things, acknowledged that (i) the forbearance period under the Third Forbearance Agreement had terminated due to the failure to make a principal and interest payment due thereunder on April 3, 2023, (ii) and, that all outstanding obligations were due and payable in full.

26. The Fourth Forbearance Agreement extended the Forbearance Period through December 31, 2023, absent the occurrence of a further Termination Event.

27. The Original Loan Documents, together with the First, Second, Third and Fourth Forbearance Agreement (and all documents referenced therein) are herein defined as the "Loan Documents."

28. As of December 31, 2023, Evans and the other borrowers had failed to find refinancing, obtain viable sales of any of the facilities, including Marshall Pines, and were otherwise in default of their obligations under the Loan Documents.

29. On or about April 19, 2024, Gahanna paid to Lender the sum of $6,500,000.00 to obtain a release from its obligations under the Loan Documents, including release of liens upon the Sage Park facility (the "Sage Park Release").

30. Nothing contained in or related to the Sage Park Release released Evans from its obligations under the Loan Documents.

31. On or about May 6, 2024, Mason and Mishawaka paid to Lender the sum of $4,500,000.00 to obtain a release from its obligations under the Loan Documents, including release of liens upon the Sage Park facility (the "Heritage Point/Central Park Release").

32. Nothing contained in or related to the Heritage Point/Central Park Release released Evans from its obligations under the Loan Documents.

33. Neither Evans nor its owners or investors have indicated any ability or willingness to make any similar payment to Lender to obtain such a release.

34. SRL has stated that it can no longer continue to manage the Marshall Pines facility as it does not generate sufficient revenues, investors will not support the continued operation financially, and SRL has not been paid management fees under its agreements with Evans.

35. Evans' obligations under the Loan Documents are secured by the Marshall Pines Mortgage, which granted the Lender, a first-priority lien upon, and security interests in, among other things, the following (collectively, the "Collateral"), each as defined in the Marshall Pines Mortgage:

    (a) the Land;
    (b) all Improvements;
    (c) all Fixtures;
    (d) all Appurtenant Rights;

    (e)    all Equipment;
    (f)    all Accounts;
    (g)    all Deposit Accounts;
    (h)    all Contracts;
    (i)    all General Intangibles;
    (j)    all Permits (to the extent assignable);
    (k)    all Money;
    (l)    all Instruments;
    (m)    all Inventory;
    (n)    all Reimbursement Contracts;
    (o)    all Rents;
    (p)    all Leases:
    (q)    all Personalty;
    (r)    all Chattel Paper;
    (s)    all Supporting Obligations;
    (t)    all Investment Property;
    (u)    all agreements for the sale of the above;
    (v)    all Imposition Deposits;
    (w)    all refunds;
    (x)    all names, trademarks, trade names, goodwill and the like;
    (y)    all rights;
    (z)    all renewals, replacements, and Proceeds of the foregoing.

36. The Marshall Pines Mortgage was properly recorded on November 1, 2019 in Book 12232, at pages 0225-0258, with the Clerk of Superior Court of Columbia County, Georgia.

37. The total amount due and owing under the Loan Documents through and including May 31, 2024 is $16,918,571.95, which includes $15,386,636.65 in principal, $1,281,935.30 in accrued but unpaid interest, and $250,000.00 in fees and other charges. Interest continues to accrue per the terms of the Loan Documents. This amount is past due and immediately payable to the Lender, together with interest and other charges that will accrue after May 31, 2023.

38. The Lender is also entitled to the payment of attorneys' fees and other costs of collection pursuant to the terms of the Loan Documents.

### COUNT ONE: BREACH OF CONTRACT AND MONEY JUDGMENT

39. Paragraphs 1 through 38 of this Complaint are incorporated herein as if fully restated.

40. As a result of the events of default under the Loan Documents, the Lender is entitled to a judgment against Evans for all amounts owed or payable under the Loan Documents, including, without limitation, the Lender's fees and costs, pre-judgment interest, and costs incurred in enforcing the Loan Documents (including attorneys' fees and costs of collection).

41. As such, the Lender is entitled to entry of a money judgment against Evans for breach of contract under the Loan Documents in an amount not less than $16,918,571.95, which includes $15,386,636.65 in principal, $1,281,935.30 in accrued but unpaid interest as of May 31, 2024, and $250,000.00 in fees and other charges, plus accrued and accruing interest, fees, expenses and charges, all of which continue to accrue (the "Money Judgment").

## COUNT TWO: APPOINTMENT OF RECEIVER

42. Paragraphs 1 through 38 of this Complaint are incorporated herein as if fully restated.

43. Pursuant to Section 8.2 of the Original Loan Agreement, Section 15(f) of the Marshall Pines Mortgage, and Sections 1 and 3 of the Marshall Pines Management Subordination Agreement, the Lender is entitled to the appointment of a receiver over the Marshall Pines facility and other Collateral in order to enforce the Lender's rights under the Loan Documents.

44. Also, pursuant to Federal Rule of Civil Procedure 66, this Court is authorized to appoint a receiver over Evans, the Marshall Pines and other Collateral.

45. The Lender has a valid claim against Evans.

46. The Lender's ability to recover by contract from Evans will likely be limited to the real property, improvements, and revenues identified in the Marshall Pines Mortgage, which secure repayment of Evan's obligations under the Loan Documents. Accordingly, absent certain circumstances, the Lender's recovery against Evans rests largely upon the Marshall Pines facility and its revenues, making the protection and preservation of the Marshall Pines facility and the business conducted therein paramount.

47. Absent appointment of a receiver, the Lender will continue to go unpaid and the total sums ultimately paid to Lender will be dramatically reduced. The appointment of a receiver is necessary to preserve, protect, and maintain the value of the Lender's secured interests the Collateral.

48. Due to the fungible nature of certain types of the Collateral, the Collateral is at risk.

49. Further, Evans has subjected the Collateral to significant risk of loss by failing to provide insurance in the manner required by the Loan Documents to protect the Lender's interest in and to the Marshall Pines facility and other Collateral. These defaults by Evans raise the specter that the Collateral will be further eroded by the necessity for the Lender to expend funds to force place insurance without the benefit of the revenues from the Marshall Pines and the business conducted therein.

50. The dire financial condition of Evans, as evidenced by its inability to make principal and interest payments to Lender for more than a year and its inability to provide

appropriate insurance, has jeopardized and will jeopardize the Lender's secured position and the benefit that can be derived from the Marshall Pines and other Collateral.

51. As each day passes, revenues are expended and the Lender and is irreparably harmed as those revenues can never be recouped or otherwise generated again.

52. Absent the appointment of a receiver, the Lender will likely have no ability to enforce and satisfy the Money Judgment.

53. The Lender is contractually entitled to the appointment of a receiver.

54. The Marshall Pines Mortgage entitles the Lender to apply for the appointment of a receiver "as a matter of strict right, without notice and without regard to the sufficiency or value of any security for the loan, … to take possession of and to operate Marshall Pines and to collect and apply any revenue [.]"  Ex C, § 15(f).

55. Accordingly, the Lender is entitled to the entry of an order appointing SAK Georgia, LLC, or another qualified individual, as receiver (the "Receiver") over the Collateral, with the Receiver having all the rights, powers, duties, authorities, and protections ordinarily granted to a receiver and necessary to take possession of, maintain, and preserve the Collateral, including, without limitation: (a) the obligation to provide quarterly operating reports to the Court reflecting the Marshall Pines' financial performance and status in such form and content, and by such time, as required by order of this Court; (b) the right and authority to market, and if appropriate, sell the Marshall Pines and other Collateral, or any part thereof, under 28 U.S.C. § 2001, *et seq.* upon the request of the Lender in accordance with the terms hereafter approved by this Court; (c) the right to retain a management company (which may be an affiliate of the Receiver) to assist the Receiver in managing and operating the Marshall Pines; (d) the right and

authority to hire an accountant, attorney, or other professionals, subject to further approval by this Court; (e) the right and authority to audit the books and records of Evans and SRL relating to the Marshall Pines facility; and (f) the right and authority to use the revenues generated by the Marshall Pines facility and other Collateral to pay reasonable and necessary expenses of managing and operating the Marshall Pines facility, including the Receiver's fees and expenses in accordance with operating budgets approved by this Court.

## COUNT THREE: INJUNCTIVE RELIEF

56. Paragraphs 1 through 38 of this Complaint are incorporated herein as if fully restated.

57. In order to empower the Receiver appointed by this Court, and to protect the interests of the Lender, and any residents or patients of the Marshall Pines facility, the Lender requests that this Court enter a preliminary injunction as described below to take effect immediately and to remain in effect for the duration of this case or until further order of this Court.

58. Without an injunction to empower the Receiver, it is unlikely that the receivership will succeed.

59. Under applicable law, the Lender is entitled to a preliminary and permanent injunction.

60. Evans has defaulted under the terms of the Loan Documents.

61. Under the Loan Documents, the Lender is entitled to the appointment of a receiver over the Marshall Pines and other Collateral in order to enforce the Lender's rights under the Loan Documents.

62. Pursuant to the Loan Documents and due to the continuing defaults by Evans thereunder, none of Defendants have the right to control the rents, revenues, earnings, income, products, and profits of the Marshall Pines facility or other Collateral.

63. Evans's defaults under the terms of the Loan Documents violate the Lender's rights thereunder and impair the value of the Collateral.

64. The Lender will suffer imminent and irreparable injury, and will be left without an adequate remedy at law unless injunctive relief is granted in aid of the Receiver, because of the nature of the Collateral (*i.e.*, the revenues of a skilled nursing facility) permit it to be dissipated, concealed or removed from the Court's jurisdiction, and because of the nature of the business conducted at the Marshall Pines facility is ripe for loss of business good will.

65. Injunctive relief is also imperative to prevent irreparable harm to the Collateral itself.

66. Accordingly, the Lender is entitled to:

> (a) entry of a preliminary injunction against all Defendants, and their successors, assigns, agents, employees, attorneys, or anyone acting for or in concert with them: (i) enjoining them from possessing or managing the Marshall Pines facility and from interfering in any way with the possession or management of the Marshall Pines facility by the Receiver; (ii) enjoining them from collecting, withdrawing, transferring, conveying, concealing, or otherwise disposing of the Collateral, including any revenues and profits derived therefrom, during and pending the appointment of the

        Receiver; (iii) requiring them to pay the revenues and other cash collateral derived from the Marshall Pines facility and other Collateral to the Receiver and to otherwise fully cooperate with transition of management of the Marshall Pines facility to a manager selected by Receiver; (iv) enjoining them from removing any property from the Marshall Pines facility and from removing, destroying, concealing, changing, or altering in any manner any of the books or records relating to the ownership, possession, or operating of the Marshall Pines facility and other Collateral; (v) requiring them to immediately pay and turn over to the Receiver and to perform all other acts necessary to transfer to the Receiver all funds on hand in cash and all funds held in deposit accounts for the benefit of the Marshall Pines facility or arising from the ownership, possession, or operating of the Marshall Pines facility and all accounts, accounts receivable, and any other collectibles, and all keys, books, records, equipment, and all things in any manner related to the ownership, possession, or operation of the Marshall Pines facility;

(b)    entry of a preliminary injunction enjoining Defendants, or any party who is provided with notice of the Court's order, from prosecuting any claim against the Receiver or the Collateral, other than in this action and only after a proper motion is filed and an order entered allowing such party to file such a claim herein; and

  (c)  on final trial of this cause, enter a permanent injunction consistent with the above preliminary injunctions, except as modified to the extent necessary to protect the Lender's interests in the Collateral.

WHEREFORE, the Lender respectfully requests as follows:

(a)  Upon Count One, that the Lender have judgment against Evans for an amount not less than $16,918,571.95, which includes $15,386,636.65 in principal, $1,281,935.30 in accrued but unpaid interest, and $250,000.00 in fees and other charges, plus accrued and accruing interest, fees, expenses and charges, all of which continue to accrue;

(b)  Upon Count Two, that a receiver be appointed as soon as possible to take possession and control of the Collateral in order to satisfy the Money Judgment and granting such receiver all powers, duties, authorities, and protections ordinarily granted to a receiver and necessary to possess, maintain, and preserve and otherwise maximize the value of the Collateral for the benefit of the Lender, including, without limitation, the power to sell the Collateral or any part thereof pursuant to 28 U.S.C. § 2001, *et seq.*, upon request and further order of this Court;

(c)  Upon Count Three, that the Lender be granted the injunctive relief as requested herein to, among other things, enjoin Defendants (and their agents and all parties acting by, through, or in concert with them) from interfering with the duties of the Receiver, to direct the payment of revenues from the Marshall Pines facility and other Collateral to the Receiver, and for all other relief that may become necessary to maintain, preserve, and protect the

Collateral and in aid of the duties conferred upon the Receiver by order of this Court;

(d) That the Court order such other and further relief as the Court deems just and proper.

Respectfully submitted this 5th day of June, 2024.

        **GREENBERG TRAURIG, LLP**

        */s/ Taryn W. Harper*
        John D. Elrod (pro hac vice application forthcoming)
        Taryn W. Harper, GA Bar No. 335174
        Michael J. King (*pro hac vice* application forthcoming)
        3333 Piedmont Road NE, Suite 2500
        Atlanta, GA 30305
        Tel. (678) 553-2100
        Fax: (678) 553-2212
        Email: elrodj@gtlaw.com
               harpert@gtlaw.com
                 kingm@gtlaw.com

        -and-

        **FREDERIC DORWART, LAWYERS**[1]
        Samuel S. Ory, OBA No. 30340
        124 East Fourth Street
        Tulsa, Oklahoma 74103
        Telephone: (918) 583-9922

        *Counsel for Plaintiff*

---

[1] Pending filing and approval of Pro Hac Vice Applications.

## VERIFICATION

Before the undersigned officer, duly authorized by law to administer oaths, comes Eric R. Ernst, Senior Vice President and Director, Special Assets, and on behalf of BOKF, N.A., who, after first being duly sworn according to law on oath, deposes and states that the facts contained in *Verified Complaint for Damages, Appointment of Receiver, and Injunctive Relief,* are true and correct and within his personal knowledge.

Sworn to and subscribed before me this 5 day of June , 2024.

_Kathy Norrid_
Notary Public
My Commission Expires: 4-20-25

Name: ERIC R. ERNST

[NOTARIAL SEAL]

Notary Public
State of Oklahoma
KATHY NORRID
PAWNEE COUNTY
COMMISSION #17003838
Comm. Exp. 04-20-2025